The Columbus Watch Company et al., Appellants, *v.* Anthony J. G. Hodenpyl et al., Respondents.

Where a judgment is entered for a debt justly due and owing, the fact that it was entered upon an offer to allow it, does not render it collusive in any sense which allows another creditor to interfere.

In an action, by another creditor, to set aside such a judgment as fraudulent, the burden is upon plaintiff to show that the indebtedness did not exist and defendant is not called upon to establish its existence or *bona fides* until it has been impeached.

One member of a firm died leaving a will by which he directed his executors to "conduct his interest in the business" in the firm name in conjunction with the surviving partner; the business was so carried on. Subsequently judgments were recovered against the firm and executions issued thereon. In an action by other creditors, among other things, to set aside said executions, *held*, that the provisions of the Code of Civil Procedure in relation to the issuing of executions against executors did not apply (§§ 1731, 1825, 1826), that as to the fund belonging to the estate, left under the directions of the will invested in the business, the executors became copartners and the debts incurred in the business were claims upon the partnership primarily and not upon the testator's general estate; and that the creditors dealing with the new partnership had the usual rights of partnership creditors.

*Willis* v. *Sharp* (113 N. Y. 586), distinguished.

Also *held*, that said provisions did not apply to executions issued upon judgments against the firm which were rendered upon debts originally owing by the old firm, but which had, with the consent of the judgment creditors, been assumed by the new firm.

Reported below, 61 Hun, 557.

(Submitted June 16, 1892; decided October 11, 1892.)

Appeal from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made October 14, 1891, which affirmed a judgment in favor of defendants, entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Franklin Bien* for appellants. This action is brought by attaching creditors against judgment creditors, both having a lien on the same property. Plaintiffs claim the liens of defend-

ants by reason of their judgments and executions to be fraudulent and obstructions in the way of plaintiffs' liens. The action is maintainable. (*Bates* v. *Plonsky*, 28 Hun, 112; *Keller* v. *Payne*, 22 Abb. [N. C.] 352; *Tannenbaum* v. *Rosswog*, 22 id. 352.) The validity of plaintiffs' attachments could not be passed upon in this action. (*Skinnion* v. *Kelly*, 18 N. Y. 355.) An executor or executrix has no power to confess judgments. If offers of judgment are made to avoid the provisions relative to confessions of judgment they are fraudulent. (*Ross* v. *Bridge*, 24 How. Pr. 163; Code Civ. Pro. § 738.) The executions issued on these judgments are null and void and contrary to the Code of Civil Procedure. (Code Civ. Pro. §§ 1371, 1825, 1826; *Syms* v. *Mayor, etc.*, 105 N. Y. 159.) An estate can carry on business. (*Burwell* v. *Mandeville*, 2 How. [U. S.] 559.) An attachment may issue against an executor. (*In re Hurd*, 9 Wend. 465.)

*Daniel P. Hays* and *Samuel Greenbaum* for respondents. The petitioner who applied for the revocation of the letters and who was a merchandise creditor, standing exactly in the same position as the judgment creditors and the plaintiffs in this action, was not a creditor of the estate of Joseph Stern, deceased, and therefore could not make the application. (*Willis* v. *Sharp*, 113 N. Y. 586; 115 id. 396.) The estate of the deceased will, under no circumstances, be liable for the debts contracted by the executors, unless the will clearly shows an intention on the part of the testator to charge his estate for any liability of the executor while so conducting such business, and only such part of the assets as are embarked in the business by the executor can be made liable for the payment of debts incurred by the executor in the management of such business. (*Stewart* v. *Robinson*, 115 N. Y. 328; *Williams* v. *Whedon*, 109 id. 333; *Loeschick* v. *Hatfield*, 51 id. 660; *Cushman* v. *Addison*, 52 id. 628; *Emerson* v. *Senter*, 118 U. S. 3; *Haynes* v. *Brooks*, 42 Hun, 528; *In re Hurd*, 9 Wend. 465; *Metcalf* v. *Clark*, 41 Barb. 47.) The judgments sought to be set aside are not entered against

the defendants Stern & Stern in their representative capacity, and the insertion of the words "executor" and "executrix" in the title of the action after two of the names.is merely *descriptio personæ.* (*Stewart* v. *Robinson,* 115 N. Y. 334; *Beers* v. *Squire,* 73 id. 297; *Donohue* v. *Kendall,* 18 J. & S. 388; *Nerill* v. *Seaman,* 6 N. Y. 168; *Sheldon* v. *Hoy,* 11 How. Pr. 14.)

Gray, J.   The plaintiffs were creditors of the firm of Stern & Stern, in New York city, and had procured attachments to be issued upon their claims as set forth in their several actions. They then brought this action for equitable relief, seeking to set aside certain judgments recovered against Stern & Stern and the executions issued thereon against the property attached, and to restrain the sheriff from paying the executions until they, these plaintiffs, could perfect judgments in their other actions.   The grounds upon which plaintiffs base their right to such equitable relief are a fraudulent collusion in obtaining the judgments and the nullity of the executions, for being issued against executors in contravention of the requirements of the provisions of the Code of Civil Procedure.   In 1886, Joseph Stern, a member of the firm of Stern & Stern, died; leaving a will, whereby he constituted his widow, the defendant, Dinah Stern, and his partner, the defendant, Simon Stern, the executors of his estate; and therein authorized them "to conduct his interest in the business then carried on by him under the firm name of Stern & Stern, in conjunction with his brother, in such manner as they should deem proper and for such time as they should deem for the interest of his estate." Thereafter the business of the testator's firm was carried on by the surviving partner and Joseph Stern's executors until November 29, 1889.   On that date the judgments complained of were recovered against the firm of Stern & Stern and executions thereon issued to the sheriff.   The trial judge found that each of the judgments was for a debt justly owing by the firm to the party or parties in whose favor the judgment was entered; and nothing which is pointed out by the appellant's

counsel would warrant us in saying that the findings were not justified. Indeed, their counsel bases his attacks upon the judgments, upon inferences from the methods in which the judgments were recovered, rather than upon anything which amounts to evidence affecting the *bona fides* of the claims of the judgment creditors.

They were entered upon offers made by the defendant firm to allow judgment to be taken for the amount claimed, and, of course, in such a sense, they might be called collusive; but, if made to secure the payment of a just indebtedness, the offer to allow judgment to be entered is not a collusion which violates any rule of law, or gives the right to another and less fortunate creditor to interfere. The existence of some other purpose must be shown, which involves the commission of a fraud or a legal injustice upon creditors, to render fraudulently collusive the preference permitted to a creditor in allowing an immediate entry of judgment in his suit. The judgments were all for goods sold and delivered to the firm, with the exception of three, which were for moneys loaned to the firm. These latter judgments were recovered by relatives and they are particularly the subject of attack.

I see no good reason, nor is any advanced, for disturbing the conclusions reached by the learned justices at the Special and General Terms. There was some evidence to support the finding as to the *bona fides* of the indebtedness, and there was no proof affirmatively establishing, or even tending to establish, on the plaintiff's part, that the judgments were for fraudulent or non-existent demands. The courts below have drawn their inferences from the testimony given by defendants with respect to the judgments, and we cannot and should not disturb them.

I think, too, that the General Term justices correctly held the burden to have been upon the plaintiffs to show that there was no such indebtedness, and that it was not incumbent upon the defendants to establish its existence, or *bona fides*, until it had been impeached.

The appellants say that the executions issued upon the judgments of the defendants were null and void, and cite section 1731 of the Code, which provides that an execution upon a judgment for a sum of money against an executor is regulated by sections 1825 and 1826 of the Code. Those sections provide that the surrogate in such a case must permit the execution to issue by an order, and for the giving of a notice of six days. The judgments, however, were not against the estate of the deceased partner and were not within these Code provisions. They were upon debts owing by the firm of Stern & Stern and the executions were not issued against the defendants, who were executors of Joseph Stern, the deceased partner, as such executors. They were partners in the business and in affixing to the names of Simon Stern and Dinah Stern the words executor and executrix, they were used as descriptive merely of the persons. As executors they were not interested in the business of the firm, otherwise than as the will authorized them to take part in it. The interest in that business, which testator had at the time of his decease, was continued by his executors, and his general estate was not engaged. The claims of the judgment creditors were contracted either upon loans to, or in the course of business with the firm of Stern & Stern, and what was subjected to the hazards of that business was the particular part of the testator's estate invested in his firm's business.

As to such a fund, the executors became copartners and the debts incurred in the business were claims upon the partnership primarily, and not upon the testator's estate.

This will differs from that in *Willis* v. *Sharp* (113 N. Y. 586), in that here the testator did not subject his general assets to the hazards of the business ; while there the language of the will was so general, as to the powers conferred upon the executors to dispose of the whole estate in the conduct of the business, as to bind the general estate of the testatrix for the business debts. The right of executors to continue a business, in which their testator had been engaged, has been the subject of much consideration by the courts and the rules of

construction as to the powers of executors, in such cases, are well settled.    They derive those powers not from their office, but by virtue of the authority in the will.    Such an authority must be explicitly found and the language of the will must be resorted to, when a question arises as to the nature of the liability which is incurred in the conduct of a business by executors.    The question was carefully reviewed in *Willis* v. *Sharp* (*supra*) by Judge Andrews and the present case presents no occasion for a further discussion.    The direction to the executors in Joseph Stern's will was explicit enough and nothing appears in the case warranting any other conclusion than that his executors, with respect to the business of Stern & Stern, subjected to its risks only that part of the estate which their testator had left invested in it and gave to creditors dealing with the new partnership the usual rights of partnership creditors.

The claim of appellants that certain of the judgments were for loans made in the lifetime of Joseph Stern, the deceased partner, and that, therefore, resort could only have been had to his executors, is untenable.

In the one case, a legacy was due to a daughter from her father's estate; but she let it remain in the business, drawing interest upon it.    She thereby waived her right to insist upon its payment out of the estate and elected to become a creditor of the firm and being such a creditor she had the right to pursue her remedy against the firm assets, for the recovery of the money loaned.    In the other case, a loan had been made to the old firm, which was continued with the firm formed upon Joseph's death, and which was reduced in amount, from time to time, by payments by the new firm.    For the balance due in 1889, she held the firm's note, which was placed in judgment.    She had thus become a creditor of the firm, and, as such, entitled to proceed by judgment and execution in the ordinary way.    As all the claims put in judgment were upon an indebtedness of the partnership, the provisions of the Code, relied upon by the appellants, did not apply; as they undoubtedly would have, had the judgments, to collect which the execu-

tions were issued, been recovered upon claims against the estate of the deceased testator.

These views are, in substance, those stated by the learned justice who spoke for the General Term, and, as the other questions are sufficiently answered in his opinion, I think the judgment appealed from should be affirmed by us, with costs.

All concur.

Judgment affirmed.