ANNA T. GEYER, Appellant, *v.* EDWARD L. SNYDER et al., as Executors, etc., Respondents.

One of two or more executors has power to dispose of the assets of the estate, even if his co-executors do not join in the transfer.

Where a trustee buys an interest in the trust property, or secures from the beneficiary a release, if the latter is competent to contract, in the absence of proof of actual fraud or of a suppression of the truth, or any undue advantage taken of him, the rights of the parties will not be affected by the fiduciary relation.

*It seems*, however, if it be shown that the price paid was inadequate, or that the trustee made a profit out of the transaction, the law presumes fraud, concealment or undue influence, or conduct inconsistent with loyalty to his trust, and throws upon him the burden of proving facts rebutting this presumption.

Plaintiff, under the will of her grandfather, was entitled to a one-twenty-eighth share in his estate.  Of the three executors who qualified, two of them were each entitled to a share, as was also the wife of the third.  The bulk of the estate was invested in a business which had been carried on by the testator and two of the executors, and another who was also entitled to a share in the estate.  By an agreement to which the executors and the surviving partners were parties, executed in 1878, the interest of the testator was fixed and liquidated at $120,000, and was transferred to the surviving partners for that sum.   This agreement was ratified and confirmed by an instrument under seal executed by all the beneficiaries, including plaintiff, and by her husband.   In 1879 plaintiff, upon payment to her of $5,352, executed to the executors a general release and discharge under seal.   In 1890, and after the death of all the executors, this action was brought against their personal representatives to set aside all the instruments so executed, and for an accounting, on the ground of fraud. The only proof offered by plaintiff was the original articles of co-partnership, and those entered into by the new firm after the testator's decease.  It was admitted that the interest of the latter at the time of his decease, as stated on the books of the firm, was $138,242, but it appeared that the value of the interest was then unknown and uncertain. *Held*, that upon the facts disclosed the agreement for the sale was neither void nor voidable; that its efficacy as a legal transfer was not destroyed because of the fact that two of the surviving partners were executors ; that the signature of the other executor alone was sufficient to pass a title, and this could not be questioned solely upon the ground that the other executors unnecessarily made themselves parties; but that the transaction was in effect a sale by the legatees, including plaintiff, and the purchasers acquired an unimpeachable title, that the disparity between the sum stated on the books and the price paid was

not such as to show that the testator's share was sold at less than its true value.

Also *held*, that plaintiff was not entitled to a strict application of the equitable rule which she might have invoked had she moved with greater diligence; and from her long silence there was a presumption of fair dealing which overrode any presumption of wrongdoing growing out of the trust relation of the parties.

Reported below, 69 Hun, 115.

(Submitted November 29, 1893; decided December 19, 1893.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made May 11, 1893, which affirmed a judgment in favor of defendants entered upon a decision of the court on trial at Special Term.

This action was brought by plaintiff, one of the beneficiaries under the will of Phillip W. Engs, deceased, to have certain instruments executed by the executors of said Engs and others declared illegal and void and for an accounting.

The facts, so far as material, are stated in the opinion.

*Edward B. Merrill* for plaintiff. The court, of its own motion and without a demand or request from the defendants, could not have invoked in a proceeding in equity either " lapse of time " or " acquiescence," or " *laches*," or any other remedy with which to protect the testators of the present defendants, or their estates, from their fraud upon the plaintiff. ( *Wheeler* v. *Smith*, 9 How. [U. S.] 55, 81, 83; Willard's Eq. Juris. 251, 252; *Douglass* v. *Ferris*, 138 N. Y. 192.) The answer of the defendants is an insufficient pleading, and does not present such facts, or evidence of facts, as will uphold the decree. (*Robinson* v. *Stewart*, 10 N. Y. 189–194; *Jackson* v. *Hart*, 11 Wend. 343; *Bolton* v. *Gardner*, 3 Paige Ch. 273; *Fish* v. *Miller*, Hoff. Ch. 267; *Lawrence* v. *Pool*, 2 Sandf. 540.) The conduct of the executors and trustees is wholly reprehensible and in violation of law. (*Hart* v. *Ten Eyck*, 2 Johns. Ch. 62; *Hannahs* v. *Hannahs*, 68 N. Y. 610; *Allfrey* v. *Allfrey*, 1 Mac. & G. 87; *Gresley* v. *Mousely*, 4 De Gex & J. 78; *Davoue* v.

*Fanning*, 2 Johns. Ch. 252 ; *Ten Eyck* v. *Craig*, 62 N. Y. 406 ; *Wedderburn* v. *Wedderburn*, 2 Keen, 722 ; 4 Myl. & C. 41 ; *Graves* v. *Waterman*, 63 N. Y. 657 ; *Bolton* v. *Gardner*, 3 Paige Ch. 273.) The burden of proof is upon the trustees, or executors, to establish the fact that when the transactions occurred between themselves, or between themselves and the *cestuis que trustent*, or heirs, all the parties were upon a "common footing," and at "arm's length," and it is for the executors also to show that the contract of purchase and sale was *bona fide*. (*Bolton* v. *Gardner*, 3 Paige Ch. 273 ; *Siemon* v. *Wilson*, 3 Edw. Ch. 36 ; *Boyd* v. *De La Montagnie*, 73 N. Y. 498 ; *Sears* v. *Shafer*, 1 Barb. 408 ; *Case* v. *Case*, 49 Hun, 83 ; *Fisher* v. *Bishop*, 108 N. Y. 25 ; 1 Story's Eq. Juris. [13th ed.] § 322 ; *Farrant* v. *Blanchford*, 1 De G., J. & S. 107, 119.) The court below says in the opinion : " I think that from the lapse of time and the acquiescence of the plaintiff the fairness of the transaction should now be presumed. Even if the plaintiff had the right to avoid the sale and settlement, her *laches* in failing to seek such relief, or to take such action for so many years, would be a perfect answer to her present claims." This is erroneous. (*People* v. *S. B. B. Co.*, 28 Hun, 274 ; *Decouche* v. *Savetier*, 3 Johns. Ch. 190, 216 ; *Goodrich* v. *Pendleton*, Id. 384 ; *Coster* v. *Murray*, 5 id. 522 ; *Robinson* v. *Robinson*, 5 Lans. 165, 167 ; *Wall* v. *Cockerell*, 1 H. L. Cas. 229 ; 3 Wait's Act. & Def. 472, § 3 ; *Walker* v. *Symonds*, 1 Swanst. 64 ; 1 Story's Eq. Juris. §§ 321, 322 ; Bispham's Prin. of Eq. § 259, p. 324 ; Kerr on Fraud & Mistake, 298, 300 ; *Ross* v. *Willoughby*, 10 Price, 2 ; *Parsons* v. *Hughes*, 9 Paige Ch. 521 ; *Miller* v. *Craig*, 6 Beav. 433 ; *Michaud* v. *Girod*, 4 How. [U. S.] 503 ; *Fish* v. *Miller*, Hoff. Ch. 267 ; *Pusey* v. *Desbouvrie*, 3 P. Wms. 316 ; *Bowles* v. *Stewart*, 1 Sch. & Lef. 209 ; *Hallett* v. *Collins*, 10 How. [U. S.] 174 ; *Wheeler* v. *Smith*, 9 id. 55 ; *Bolton* v. *Gardner*, 3 Paige Ch. 273 ; *Broderick* v. *Broderick*, 1 P. Wms. 139.) If the admitted facts are construed in accordance with the well-settled principles of equity, which should be a controlling restraint upon

executors and trustees in their dealings with estates and with heirs and *cestuis que trustent*, then their conduct in this case was constructively a fraud upon the beneficiaries. (*Wilcox* v. *Smith*, 26 Barb. 316, 346; *Adair* v. *Brimmer*, 74 N. Y. 539; *In re Wagner*, 119 id. 28, 35.)

*Lewis Hurst* and *Arthur Hurst* for respondents. The transaction complained of by the plaintiff was an honest and fair settlement between the executors and surviving partners of the interest of the estate in the old concern of P. W. Engs & Sons. (*Williams* v. *Wheedon*, 109 N. Y. 335, 338; *Sage* v. *Wooden*, 66 id. 578; *Butcher* v. *Hepworth*, 26 N. Y. S. R. 196; *Evans* v. *Evans*, 9 Paige, 178.) Even if the agreement of settlement constituted a sale by executors to themselves, still such a transaction is not void *per se*, but is voidable at the election of the *cestui que trust*. (*Bostwick* v. *Atkins*, 3 N. Y. 53; *Boerum* v. *Schenck*, 41 id. 182; *Hartner* v. *Thompson*, 5 id. 160; *In re Niles*, 113 id. 547.) The final accounting made out of court by the executors of the estate of Philip W. Engs and the releases then given by the plaintiff and other beneficiaries on the final distribution of the estate are as conclusive as though made under a decree of the surrogate upon a judicial accounting. (*In re Wagner*, 119 N. Y. 28; 52 Hun, 23; *In re Bradford*, 21 N. Y. S. R. 900.)

MAYNARD, J. The plaintiff was entitled to a one-twenty-eighth share of the estate of her grandfather, Phillip W. Engs, who died May 19th, 1875. The executors of his will, who qualified, were his sons Samuel F. and George Engs, who were each entitled to one-seventh of the estate, and his son-in-law, Henry A. Bostwick, whose wife was also entitled to one-seventh. Apparently the bulk of the estate was invested in a business carried on by the testator and the two sons and a nephew, Henry Snyder, Jr., who was also entitled to a share of the estate under the will. By an agreement made April 28th, 1876, to which the executors and the surviving partners were parties, the interest of the testator in the firm was fixed

and liquidated at the sum of $120,000, upon the payment of which, in specified installments, the surviving partners who had formed a new firm for the continuance of the old business became the owners of his share in the partnership property and business. Annexed to this agreement and forming a part of it was the written consent and approval of every legatee under seal, witnessed and acknowledged, including the plaintiff and her husband, by the express terms of which they ratified and confirmed it. May 7th, 1879, the plaintiff executed to the executors a general release and discharge under seal, and acknowledged, of all claims and demands against them as executors, and of her interest in the estate. The consideration of this release was the payment in money of $5,352 by the executors, of which a balance of $84 was paid at the time of its execution, and the instrument recited that this sum had been accepted and received by the plaintiff in full payment and settlement of the balance due her from the estate or the executors, and that such payment and settlement should have the same force and effect as if made pursuant to a decree of the surrogate upon a final accounting by the executors. Thirteen years after the execution of the release and sixteen years after the execution of the agreement of sale and of plaintiff's consent thereto, and after the death of all the executors, the plaintiff brings this action against their personal representatives, to set aside all of these instruments and to have an accounting of the estate of Phillip W. Engs, upon the ground that she was overreached in the transaction; that the consideration paid by the surviving partners for the interest of the testator was grossly inadequate to the value of the interest conveyed; and that the executors perpetrated a fraud upon her by misrepresenting the value of such interest and concealing from her the true condition of the estate. The material allegations relating to the fraud and fraudulent concealment and inadequacy of price are all denied in the answer of the defendants.

The plaintiff offered no proof in support of the allegations of her complaint except the original articles of co-partnership

to which the testator was a party, and the articles entered into by the surviving partners for the formation of the new firm, the execution of which was not denied by the defendants. The defendants offered no evidence except the general release executed by the plaintiff, and the receipt which the executors gave the new firm for the $120,000 paid upon the sale of the testator's interest in the old firm; and they admitted that his interest in the assets and business of the firm at the time of his decease, as stated on the books of the firm, was $138,242. In this situation of the pleadings and proofs the plaintiff insists that she was entitled to judgment for the relief demanded. The court below has held otherwise, and, as we think, correctly. Upon the facts disclosed by this record it must be held that the agreement for the sale of the testator's interest in the old firm to the surviving partners was neither void nor voidable. Its efficacy as a legal transfer of title was not destroyed because two of the surviving partners were also executors. Upon the death of the testator the title to the firm property vested in the surviving partners for the purposes of liquidation. From that time the testator's interest therein was limited to his share of the net proceeds after liquidation. One of the executors was not a member of the firm. As his wife was a legatee his interest was adverse to that of his co-executors in the transaction. He had the strongest of motives for not consenting to a sacrifice of the property, and for endeavoring to obtain its full value, and the best possible price. In his case there was no conflict between self-interest and duty, and the legal presumption is that he was faithful to his trust. This executor alone had authority to make the sale; for it has been held that one of two or more executors has power to dispose of the assets of the estate, even if his co-executors do not join in the transfer. (Williams on Executors, pp. 851-2.) His signature, therefore, to the agreement of sale was sufficient to pass a title, which cannot be questioned solely upon the ground that the other executors unnecessarily made themselves parties to the instrument. But this transaction was in effect a sale by the legatees, includ-

ing the plaintiff, to the surviving partners of property which must be disposed of in order to effect a settlement and distribution of the estate. They united in the agreement of sale, and made themselves parties to it; and the purchasers thereby acquired an unimpeachable title. It is true that two of the purchasers were executors of the estate; but in the absence of proof of actual fraud, or a suppression of the truth, which is equivalent to it, or of any undue advantage taken of the beneficiary, the rights of the parties would not be affected by the fiduciary relation.

The plaintiff, in the brief of counsel submitted, seems to assume that upon the bare proof of a transaction with the executors, by virtue of which, for an apparently good consideration, her interest in the estate was released or transferred to them, fraud will be presumed, and that the burden is at once cast upon them to show that no undue advantage was taken of her. This position is not supported by any principle of law or rule of equity which we have been able to find. If the beneficiary is competent to contract, the trustee may deal with him without necessarily incurring the suspicion of bad faith. But if he buys an interest in the trust property, or secures from the beneficiary a release to himself, and it is shown that the price was inadequate, or that he has made a profit out of the transaction, the law presumes fraud, or concealment, or undue influence, or some conduct inconsistent with loyalty to his trust, and places upon him the burden of proving that he disclosed to the beneficiary every circumstance relating to the condition of the property which he ought to know in order to form a correct judgment of its value; and that he exerted no undue influence to obtain the assent of the beneficiary to the bargain. It is here that the fatal weakness of plaintiff's case is to be found. She gave no proof of inadequacy of price, or tending to show that the executors had made a large profit out of the property purchased. Had she shown that they obtained property of the estate worth $280,000 for $120,000, as she now alleges; or that for $5,000 she released an interest in the estate which

was of the value of $10,000, that fact alone would have given
rise to a very strong presumption that she had been defrauded
by the executors, from the consequences of which they could not
escape, except by the most satisfactory proof that no material
information was withheld, and that the sale was her own free,
intelligent and deliberate act.

The plaintiff insists that the articles of co-partnership entered
into between the executors and the other surviving partner,
afford some evidence that the actual value of the testator's
interest was $280,000. Such an inference cannot, we think, be
justly drawn from the recitals in this instrument. On the con-
trary, it appears that the value of the interest was then unknown
and uncertain, and that it would for some time be unascer-
tainable. The parties, therefore, fixed upon a sum which
each should be regarded as contributing to the capital out of
the estate of the deceased partner for the purposes of the
capitalization of the new firm and the distribution of divi-
dends. As each had an interest in the estate, and the addi-
tion made to each share was in proportion to such interest, it
is evident that the actual value of the estate was not important.
It is further urged that the finding of the trial court that the
nominal and unliquidated share of the testator's interest as
stated on the books of the firm was the sum of $138,242, is
some evidence of inadequacy of price, and that the executors
made a profit of upwards of $18,000 by the purchase. But
this is not a finding that the sum named was the cash value
of the testator's share. The contrary is to be inferred. It is
a statement of the nominal and unliquidated amount of his
share. It would be subject to the payment of debts and the
shrinkage which almost inevitably occurs upon the conversion
of firm assets into money. The disparity between this sum
and the actual amount paid is not such as to indicate that the
testator's interest was sold for less than its true value.

The trial court has refused to find that the executors made
any profit out of the estate by the purchase of this interest,
and there is not sufficient evidence in the record to support
such a finding if it had been made. The plaintiff is not enti-

tled to a strict application of the equitable rule, which she might have invoked if she had moved with some degree of diligence to set aside the agreement and release, and to demand an accounting. An acquiescence for sixteen years requires some explanation. If it was due to an ignorance of the facts for which the executors were responsible, it should have been shown. The newly discovered facts should also have been proven.

From her long silence, there is a presumption of fair dealing which overrides any presumption of wrongdoing growing out of the trust relation of the parties.

The judgment must be affirmed, with costs.

All concur.

Judgment affirmed.