for as much as he had been getting from the whole building, the insurer under a policy of this kind is not entitled to a reduction by reason of the fact that the insured sustains no loss in earnings. The difficulty with counsel's argument is that this policy is not unqualifiedly a contract of indemnity. As already stated, it partakes of the character of a valued policy, and, in the absence of fraud, no diminution of the stipulated sum, when adjusted, is permissible to the defendant. The defendant took part in the selection of the appraisers, and I seriously doubt its right to interpose the defense of breach of warranty (Smith v. Insurance Co., 62 N. Y. 85); but I prefer to uphold the claim of the plaintiff on the ground already stated. The policy was prepared by the insurer, and evidently for the protection of its interests, and should be construed most favorably to the insured, if the meaning of any part of it is in doubt. Matthews v. Insurance Co., 154 N. Y. 449–456, 48 N. E. 751, 39 L. R. A. 433. The judgment and order should be affirmed, with costs to the respondent.

Judgment and order affirmed, with costs. All concur.

---

(64 App. Div. 191.)

MARKELL et al. v. HILL et al.

(Supreme Court, Appellate Division, Fourth Department. July 23, 1901.)

ASSIGNMENT FOR BENEFIT OF CREDITORS — JUDGMENT AGAINST ASSIGNEE — FRAUD—COLLUSION.

    A guardian intermingled the wards' fund with his own and with partnership funds, and after his death his partner assigned their estate for the benefit of creditors to a surety on the guardian's bond. The guardian's administrators sued the assignee to segregate the wards' funds, and obtained a judgment, which the creditors of the guardian sought to set aside as being for the benefit of the assignee in his capacity as surety. *Held* that, though the judgment was virtually by consent, and both parties thereto were practically represented by the same attorney, the court having found that the action was in good faith, and not instituted to enable the assignee to avoid payment as surety, it was error to set the judgment aside as constructively fraudulent.

    Adams, P. J., dissenting.

Appeal from special term, Onondaga county.

Proceedings by James Markell and others against D. Munro Hill, individually and as assignee, and others, to set aside a judgment against said assignee as fraudulent and collusive. From a judgment in plaintiffs' favor (69 N. Y. Supp. 537), defendants appeal. Reversed.

Argued before ADAMS, P. J., and SPRING, WILLIAMS, and RUMSEY, JJ.

Homer Weston, for appellants.
Ceylon H. Lewis, for respondents.

SPRING, J. This action was commenced June 12, 1899, to set aside a judgment heretofore entered on the ground that the same was procured through fraud and collusion with the defendant D. Munro Hill. A detailed recital of the complicated, though undisputed, facts

which form the basis of the cause of action is necessary to a proper comprehension of the legal principles which control its determination. William C. Rodger, in 1897, and for many years prior thereto, was a resident of the village of Jordan, in said county, and was long prominently identified with its business affairs. In conjunction with one Robert E. Greene, he carried on a banking institution in the village under the firm name of Rodger & Co., of which Greene was the cashier. Said Rodger was also interested in the coal and lumber business at Jordan under the firm name of William C. Rodger & Co., and which he personally managed and carried on. Mr. Rodger died January 2, 1898, and it soon developed that he was insolvent at the time of his death, and that the banking company was in like financial stress. On January 7th, Greene, as surviving partner, made a general assignment of the assets of the banking business to the defendant D. Munro Hill, for the benefit of creditors, which trust the latter at once assumed. The plaintiffs, who are numerous, were depositors in said banking institution, and their several demands had culminated in judgments, and this action is commenced by them as judgment creditors, the requisite formal facts preliminary to the maintenance of the action appearing. In 1897 an action of partition was pending among the heirs at law of one Blair. The lands described in the complaint were situated in New York, Cayuga, and Onondaga counties. Among these heirs were six infants, for whom William C. Rodger had been appointed guardian ad litem in the action, and also by the surrogate's court of Onondaga county, where the infants resided, their general guardian. On the bonds which Rodger gave as general guardian of the infants, called the "Crofut children," the defendant Hill, who was a relative of Rodger by marriage, was one of the sureties. The interlocutory judgment of sale in the partition action was entered in Onondaga county June 4, 1897, and, after a sale was had pursuant thereto, said Rodger was paid, December 23, 1897, as the guardian of said six infants, $12,445.97, and the share of this apportionable among the Crofut infants was $8,303.82. The will of said Blair had been presented for probate to the surrogate's court of New York county, where he resided, and objections were filed to its probate, and a contest had; but the same was admitted to probate. This was subsequently reversed by the appellate division of the First department, which decision was sustained by the court of appeals (In re Blair's Will, 152 N. Y. 645, 46 N. E. 1145), thus establishing the intestacy of Mr. Blair. The attorneys in New York who conducted this contest were, by agreement, to receive one-fourth of the avails of the sale of the premises, and which was paid to them. Of the remaining money, $2,767.94 were deposited in the bank of Rodger & Co. to the credit of one of the firms of which Rodger was a partner. Three checks, aggregating $5,871.90, were discounted at a bank in Syracuse, and on the 27th of December the avails were remitted to him, and he wrapped the money in a bundle, and placed it in the safe of William C. Rodger & Co. Another check was collected through the State Bank of Syracuse, and the proceeds placed to the credit of William C. Rodger & Co., and that account remained unchanged at the death of Rodger. Two adult parties to the partition action, and

participants in the avails of the sale, were Mrs. Fannie Blair and Mrs.
Howe. Each had received a check for her portion, and caused it to·.
be deposited to her credit in the bank of Rodger & Co. On the 28th
day of December they gave their individual checks to Rodger, re-
spectively for $1,530.99 and $1,834, on the bank of Rodger & Co.,
and he cashed the same out of the $5,871.90 which he had placed in
the safe of his coal firm, and caused the checks to be credited to the
account of that firm in the bank. Further sums were abstracted from
this bundle, and added to the bank account of the said coal firm, until
at the time of his death only $2,000 remained of the moneys he had
deposited in the safe. No part of the moneys received from the par-
tition sale were ever deposited to the credit of Rodger as guardian
of said infants, or as a separate fund, but the deposits were com-
mingled with the general fund of the coal company, as above de-
scribed. Mr. Rodger's personal account in the bank, when he died,
showed a balance of $9,208.03, no part of which seems to have come
from the moneys of his wards in the partition action. The account
of William C. Rodger & Co., notwithstanding its augmentation by
the moneys of said infants as above described, was overdrawn $7,800.
After the death of Rodger, the defendant C. Julia Rodger and her
brother, the defendant Lewis, were appointed his administrators, and
upon their demand the avails of the check deposited in the said bank
of Syracuse to the credit of William C. Rodger & Co. were turned
over to said administrators for the benefit of the infants, whose
share it was to pay. Thereafter, and in August, 1898, an action was
commenced in the supreme court by said administrators against the
defendant Hill individually to recover the sum of $2,000, which he
had received from the bundle placed in the safe of William C. Rodger
& Co., and also to recover against said defendant, as assignee, the·
sum of $6,132.93, deposited in the said bank as aforesaid. The theory
of the said action was that, although the said moneys were deposited
in the said bank to the credit of William C. Rodger & Co., which com-
pany was insolvent, and its account overdrawn, and increased the·
general deposits of said bank, the said infants were the equitable·
owners thereof, and were entitled to a segregation of the same from
the other deposits, and its payment to the plaintiffs for the benefit of
the said infants. The complaint set forth at great length the facts·
above recited, with others, and they were admitted by the answer.

It is contended that this action was commenced and prosecuted
collusively and fraudulently, and for the purpose of relieving the
defendant Hill from liability as one of the sureties on the bonds of
Rodger as general guardian of said infants. It appears that Mr.
Homer Weston had been attorney for Mr. Rodger in his lifetime, and
also for the defendant Hill, and upon the appointment of the admin-
istrators of Rodger's estate his attorneyship continued in their behalf.
Mr. Weston prepared the complaint in the action by them against
Mr. Hill, and also the answer, which was verified by the defendant.
As Mr. Weston could not, in form, represent the latter, Mr. Everson,
a lawyer in the city of Syracuse, was called up on the telephone by
Mr. Weston, and asked to appear for and represent the defendant
Hill in said action, which, after some conversation, he consented to·

do. He had never been employed by Mr. Hill, and this engagement in his behalf was solely through Mr. Weston. The complaint was served on Mr. Hill in Mr. Weston's office, and, after the answer was prepared by Mr. Weston, it was submitted to the attorney Everson, but the additions and emendations are in the handwriting of the attorney for the plaintiff in the action. The case was tried at an equity term, and no witnesses were sworn, and the trial consisted of one or two unimportant stipulations and the oral presentation which was made by each counsel to the trial judge, and over which there was no contention. A decision was prepared by Mr. Weston conformably to the complaint, and signed, and judgment was entered November 15, 1898, and directed the defendant Hill from the assigned estate to pay to the administrators $6,202.93, and the additional sum of $2,053.33, which he had obtained from the safe as aforesaid. The learned trial judge rendered a short decision in the present case, in which he found that the parties to the action "acted in good faith, and in the belief that the judgment therein obtained was justified by the law and facts." Because of that specific finding, it is unnecessary to consider further the facts showing the manner in which the action was commenced and continued to judgment. It is but fair to Mr. Weston to add that he made a complete statement on the trial of his connection with the litigation, and claims that his entire conduct during its continuance was within the compass of the highest professional ethics. The learned trial court, however, vacated the judgment "because of the personal benefit to be derived therefrom by the defendant D. Munro Hill, and his relation as trustee for the creditors of Rodger & Co., and the knowledge of the other parties thereto of these facts, his action was illegal, and constituted a constructive fraud, and the said judgment in such part is voidable." This decision was supported by an elaborate and able opinion invoking the familiar principle that a trustee cannot deal with the estate of his cestui que trust to his own advantage, and citing Munson v. Railroad Co., 103 N. Y. 58–73, 8 N. E. 355, and kindred cases. The administrators certainly were permitted to bring the action they did. If, after careful consideration of the facts, and if upon the advice of counsel, the moneys which Rodger received for the benefit of his wards, and diverted by depositing in the bank as he did, could be traced, and recovered for the benefit of the infants, they were not only justified, but fulfilling their simple duty, in attempting to secure it by action. If all the facts alleged in their verified complaint were true, the defendant could not deny them, and judgment would follow as a matter of course. If that was the true situation, the admission by the assignee of the facts alleged in the complaint did not constitute a fraud. Watch Co. v. Hopenpyl, 135 N. Y. 430, 32 N. E. 239. If a judgment is recovered against an administrator by default on a promissory note made by the intestate, the judgment cannot be set aside solely from the fact that an indirect benefit accrued to the administrator by the judgment. The test is, in such case, did the administrator act honestly? The effect of the certificate given by the trial justice clearing the defendants from the imputation of fraud is to establish that the administrators commenced the action in good faith; that the assignee hon-

estly believed the facts contained in the complaint to be true, and so admitted them in his answer; that he was not swerved or influenced in doing this, or in anything pertaining to the conduct of the litigation, by reason of his liability upon the bonds given by Rodger as general guardian of the infants. To sum it up, his conduct during the entire transaction was fair and upright. There is no doubt of the proposition that a trustee must not manage his trust estate for his own benefit. That doctrine is not applicable to this case. This trustee was not instrumental in causing the action to be commenced. It was brought by the administrators without any connivance with him. It had its inception in an honest purpose. He may have been relieved as surety by the result of the action, but he could not secure its dismissal for that reason; nor does that fact, in the absence of fraud, vitiate the judgment. Geyer v. Snyder, 140 N. Y. 394, 35 N. E. 784. We do not wish to be understood as departing in the least degree from the salutary rule which prevents an assignee or trustee from administering the trust committed to him for his own personal advantage. A slight deflection from that path will justify the charge of fraud and collusion. Had the court found as a fact that the motive prompting the action was to enable the defendant Hill to avoid payment as surety on the guardian's bonds, an entirely different question would be presented for our consideration. But the barrier in this case exists because we are reviewing an honest transaction. In view of the finding that the parties acted in good faith, I cannot assent to the proposition that what is termed "constructive fraud" is imputable to them, and make that the basis of the cancellation of the judgment. The fraud which warrants the court in setting aside a judgment is actual, and not constructive. As is said in Ward v. Town of Southfield, 102 N. Y. 287, 293, 6 N. E. 660, 661:

"But, before a regular judgment can be thus assailed, the proof should be clear and very satisfactory. It is not sufficient merely to raise a suspicion, or to show what is sometimes called 'constructive fraud,' but there must be actual fraud."

And, again, in Ross v. Wood, 70 N. Y. 8, 10:

"The fraud which will justify equitable interference in setting aside judgments and decrees must be actual and positive, and not merely constructive."

Jones v. Jones, 71 Hun, 519, 24 N. Y. Supp. 1031; Rice v. Bruff, 87 Hun, 511, 34 N. Y. Supp. 501.

The result of this action must depend entirely upon the character of the transaction which is attacked. If clean and honest,—as found by the trial court,—it would operate unjustly to set aside the judgment, as the defendant Hill has paid the administrators in obedience to its direction. If that action included in its scope by the intent of the parties the relief of Hill as surety, then it is tinged with fraud, and cannot stand. The judgment should be reversed, and a new trial ordered, with costs to the appellants to abide the event.

Judgment reversed, and new trial ordered, with costs to the appellants to abide the event. All concur, except ADAMS, P. J., who dissents on opinion of ANDREWS, J., at special term.