PARHAM v. BURNS et al.

(Supreme Court, Appellate Division, Second Department. December 30, 1909.)

JUDGMENT (§ 414*)—SUIT TO SET ASIDE—GROUNDS.

A judgment, though entered chiefly on stipulations, cannot be set aside in a suit brought for that purpose, even if the stipulations were unauthorized, except for actual fraud; otherwise, the judgment must be assailed by direct proceedings in the action in which it was rendered.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 780; Dec. Dig. § 414.*]

Appeal from Special Term, Westchester County.

Action by Frank Earle Parham, assignee for the benefit of creditors of the Altonwood Park Company of New York, against Edward Burns and others. From a judgment dismissing the complaint, plaintiff appeals. Affirmed.

Argued before HIRSCHBERG, P. J., and WOODWARD, MILLER, JENKS, and THOMAS, JJ.

Jno. J. Adams, for appellant.
Benjamin N. Cardozo (Wilson Brown, Jr., and Edgar J. Nathan, on the brief), for respondents.

MILLER, J. The record and briefs in this case are very voluminous, but I think that a single question is decisive of the appeal, and

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

shall undertake merely to state such salient facts as are necessary to the solution of that question.

On the 18th of September, 1894, Samuel Webber Parker was indebted to the American Exchange National Bank in the sum of $217,-000. Prior to that date he had caused to be conveyed to the defendant Edward Burns several parcels of land, aggregating 725 acres, at Mamaroneck, Westchester county, which, together with certain other property not necessary to refer to, said Burns held as trustee to secure the payment of the indebtedness to the bank. On that day Burns conveyed to Charles Warren Parker 80 acres of the Mamaroneck land, referred to in the record as the "homestead," and the latter gave in exchange for said conveyance his bond for $50,000, secured by a mortgage on the property thus conveyed. On the same day Burns entered into a written agreement with Samuel Webber Parker and Charles Warren Parker, which recited the fact that Burns held said mortgage, the legal title to one-half of the remaining part of said 725-acre tract, and a mortgage of $400,000 on the other one-half (Burns had conveyed a one-half interest and had taken back a mortgage, but with that conveyance we are not concerned), and also the fact that Burns held certain other mortgages and securities and the legal title to certain other real property, and it provided that he should hold said mortgages and securities and the title to said real property as security for the payment of said sum of $217,000, and for any sum that might thereafter be advanced by the bank to either Samuel Webber Parker or Charles Warren Parker. On the 17th of June, 1896, Frank L. Parker having in the meantime succeeded to the interest of Charles Warren Parker, a somewhat similar agreement was made between him and Samuel Webber Parker and Burns. On the 1st of March, 1905, the indebtedness of Samuel Webber Parker to the bank amounted to $697,450.42. In the meantime the Altonwood Park Company, a New York corporation, had been organized and had become the owner of the equity of redemption in all said Mamaroneck property. The corporation was a family affair; Mrs. Parker, the wife of Samuel Webber Parker, holding 296 of the 300 shares, Samuel Webber Parker 1 share, two family servants each 1 share, and the secretary of the corporation 1 share.

In August, 1905, a foreclosure action was begun by Burns and the bank. The complaint in that action set forth the various agreements which had been made and the history of the entire transaction, including many matters not herein referred to, and prayed that the entire Mamaroneck tract, including the homestead, be sold to satisfy the plaintiff's lien. Samuel Webber Parker answered, setting up a counterclaim, and asking for judgment in the sum of $1,350,000. The Altonwood Park Company answered, setting up matters in defense. The case came on for trial November 25, 1905, and one witness was sworn for the plaintiff, when a postponement was agreed upon until January 15, 1906. The case then came before a different judge. The testimony of the witness already sworn was again introduced, and a stipulation, signed by the attorneys of all parties who had appeared, was filed. That stipulation provided that findings be made adjudging

the amount of the plaintiff's debt to be $600,000, and that none of the counterclaims set up were good, and that the plaintiff was entitled to foreclose its lien upon the entire property for said sum of $600,000, that judgment should not be entered until April 15, 1906, and that meanwhile the defendants should have the privilege of adjusting the matter in the manner therein stated. Thereupon a decision in the form required by law was made by the judge, and on the 18th of April, 1906, settlement in the meantime not having been made, a judgment was entered, which provided that all of the lands involved be sold in one parcel. The attorneys for the respective parties consented to the entry of that judgment. Thereafter the Altonwood Park Company, through its president, the said Samuel Webber Parker, successively applied to the court for, and obtained, four adjournments of the sale on the ground that additional time was needed by said defendant to enable it to make arrangements to protect its interest on the sale. Finally, on the 16th of August, 1906, the premises were sold in one parcel and bid in on behalf of the bank. Subsequently, on notice, the referee's report of sale was confirmed.

Thereafter a motion was made on behalf of the Altonwood Park Company to set aside the judgment of foreclosure and the sale thereunder, and particularly the sale and conveyance of the 80-acre tract. That motion was made on the prior proceedings in the action and on the affidavit of Mrs. Parker, the principal stockholder, which particularly stated that the homestead was subject only to the lien of the $50,000 mortgage, that Samuel Webber Parker had no authority to employ attorneys to represent the corporation in the foreclosure action, and that the stipulations on which judgment was entered were not authorized by the corporation. The motion was denied, by order of the Special Term, dated October 9, 1906. Thereafter Mrs. Parker brought a stockholder's action to set aside the judgment and sale in the foreclosure action, and particularly the conveyance of the 80-acre homestead. The corporation, though made a party, was not served with the summons. The complaint was dismissed on the merits after a trial; and, on appeal to this court, the judgment of the Special Term was affirmed. This action is now brought by an assignee for the benefit of creditors of the corporation to obtain the relief which was denied on the motion of the corporation to set aside the sale and in the stockholder's action brought by Mrs. Parker.

It is impossible to see how the plaintiff is in a better position than his assignor. The record is barren of evidence to show that the various proceedings hereinbefore referred to were collusively or fraudulently conducted for the purpose of defeating the rights of creditors. I shall assume, for the purpose of this discussion, that the plaintiff in the foreclosure action had a lien on the homestead tract for the sum of only $50,000, and that the attorneys for the defendants in that action had no authority to make the stipulations upon which the judgment was entered, although I think that there was ample evidence to support the findings of the trial court to the effect that said stipulations were made with the authority of the corporation and its stockholders. The surrounding circumstances all point to the conclusion

that the corporation was striving for delay to enable it to make the necessary financial arrangements to prevent foreclosure or to purchase the property on the sale, that when the effort to finance the proposition failed the claim was first advanced that the 80-acre tract should be sold separately to satisfy a lien for only $50,000, and that the present action is but an attempt by those interested in the corporation to secure relief which they failed to obtain in a direct proceeding in the foreclosure action.

But, be that as it may, the judgment in the foreclosure action cannot be collaterally attacked, except for fraud, and there is no evidence whatever tending to show that any fraud was practiced by the plaintiff in that action. The court had jurisdiction of the parties and of the subject-matter. It had before it the testimony of one witness, the stipulations signed by the attorneys, and the pleadings, which set forth the various agreements. It doubtless is the fact that the court gave judgment perforce of the stipulations; but it had jurisdiction to render the judgment, and its act was a judicial act.· ·If, in the absence of the stipulations, the court had construed the agreements, and erroneously held that the plaintiff had a·lien on the entire tract for the entire sum due, no one would doubt that, in the absence of fraud, the judgment, until reversed on appeal or set aside on a motion in the action, would be final and conclusive; and it seems to me that the case is no different from the fact that it was tried in part upon stipulations. The ground on which equity takes cognizance of suits to set aside judgments has been discussed in many cases in this state, and need not be further elaborated. As I understand it, it is settled law that actual fraud must be shown. See Ward v. Town of Southfield, 102 N. Y. 287, 6 N. E. 660; Mayor v. Brady, 115 N. Y. 599, 22 N. E. 237; Markell v. Hill, 64 App. Div. 191, 69 N. Y. Supp..537, 71 N. Y. Supp. 924 (a case tried on stipulations); Reich v. Cochran, 105 App. Div. 542, 94 N. Y. Supp. 404; Gitler v. Russian Co., 124 App. Div. 273, 108 N. Y. Supp. 793.

The appellant's main reliance, so far as this question is concerned, is the case of Bush v. O'Brien, 164 N. Y. 205, 58 N. E. 106. That was a taxpayer's suit to restrain "an illegal official act." The majority opinion did not refer in any way to the question now being considered, but held that the case was within the statute governing taxpayers' suits. It will be observed that the judgment attacked in that case was irregular on its face, because it was entered on an offer of judgment which the corporation counsel had no power to make, and the decision was put upon the ground that the action was expressly authorized by the statute. Even where a judgment is entered on an unauthorized appearance of an attorney, in the absence of special circumstances, relief must be had in the action (Vilas v. P. & M. R. R. Co., 123 N. Y. 440, 25 N. E. 941, 9 L. R. A. 844, 20 Am. St. Rep. 771); and where an attorney, having authority to appear, makes an unauthorized stipulation, the same rule applies (Young v. Watson, 155 Mass. 77, 28 N. E. 1135). Undoubtedly the corporation could have made a motion in the foreclosure action, and, upon showing that the stipulations were unauthorized, would have been entitled to an order vacating the judg-

ment entered upon them. It made a motion for that purpose, and it is difficult to see why the order made on that motion is not conclusive. Dwight v. St. John, 25 N. Y. 203; Williams v. Barkley, 165 N. Y. 48, 58 N. E. 765. But it is unnecessary now to decide that that order or the judgment in the stockholder's suit is res adjudicata. It is sufficient for the purposes of this case to hold that the judgment can be assailed only in a direct proceeding in the action.

Many propositions have been ably argued by the learned counsel for the appellant. While it is impossible to discuss them within the reasonable limits of an opinion, they have not been overlooked. Sufficient to say that the vice of his entire argument is in the assumption that fraud was shown, and that in rendering the judgment on the stipulation the court acted administratively, not judicially.

The judgment should be affirmed, with costs. All concur.