S. Samuel Di Falco, S.
The account of the executors was judicially settled by decree dated June 27, 1956. The present proceeding was instituted for the purpose of vacating and setting aside that decree and compelling the executors to repay to the estate “ all assets erroneously or wrongfully distributed ” by the executors on the ground that the accounting executors had deliberately concealed material facts and misrepresented material facts. The petitioner is an income beneficiary of one of the two residuary trusts. She demands that after vacating and setting aside the decree, the court direct the executors to distribute the entire residuary estate to the trust of which she is a beneficiary.
The present controversy centers around a legacy to a charitable institution in Germany. The eighth paragraph of the testator’s will disposes of that part of his residuary estate that is located in the United States. The will divides the American residue in two parts. In subdivision (a) of paragraph eighth, one half of the residue is directed to be held in trust for the life use of the petitioner’s mother and the petitioner. Subdivision (b) directs that the other share be held in trust for the benefit of “‘Sanatorium Groedel Stiftung’, in Bad Nauheim, State of Hesse, Germany, provided, the same is in existence at the time of my decease ”. The testator directed his trustees to administer the fund for the benefit of the sanatorium ‘ ‘ until, in the sole judgment of my said Trustees, they deem it expedient and advisable to terminate said Trust and, upon such termination of said Trust, to pay over the then principal of said trust fund, with all gains or increases thereof, together with all *1048 accumulated and accrued income to said £ Sanatorium Groedel Stiftung’.” The ninth paragraph of the will relates to the residuary estate of the testator in Germany, all of which was bequeathed to the sanatorium£ £ provided the same is in existence at the time of my decease and further provided that, in the sole discretion of my Executors * * * it would be expedient and advisable to distribute this legacy to the said ‘ Sanatorium Groedel Stiftung The expert witnesses have translated the term £ 1 Stiftung ” as £ £ Foundation ’ ’ and it will be more convenient to refer to the beneficiary as the Foundation.
The decree which settled the executors’ account, directed them to pay stated legacies and expenses and then to deliver the balance of the residuary estate to the trustees of the two trusts. There were statements in the record in the accounting proceeding that the trustees intended to pay over the corpus of the subdivision (b) trust to the Foundation pursuant to the power granted them in the will, and it seems to be the understanding in the present proceeding that in fact they did make such payment. The petitioner seeks ultimately to surcharge the executors for all assets transferred to the trustees of the subdivision (b) trust. As the first step, she requests the vacatur of the decree which directed payment to the trustees on the ground that the Foundation was not£ £ in existence ’ ’ on the date of the testator’s death and that the accounting executors- falsely represented in their accounting that it was in existence.
The ££ existence ” of the charity on October 12, 1951, the date of the testator’s death, is the only question which the parties have litigated thus far. It was stipulated by the parties that there should first be submitted to the Surrogate the issue whether the Foundation was in existence at the time of Dr. Groedel’s death, wthin the meaning of that term as used in his will. If the Surrogate shall find that it was in existence at that time, it is agreed that the petition should be dismissed. If he shall find that it was not in existence within the meaning of the will, the parties are to be given opportunity to submit proof on the issue of misrepresentation and fraud.
The experts in German law appear to agree that two things are necessary to create a Foundation under German law: first, a written deed of constitution, and secondly, authorization by the government. The basic facts are not in dispute. Documentary evidence reveals that during the lifetime of the testator, a German lawyer, purporting to act on behalf of the decedent pursuant to authority stated to have been granted by him, appeared in the District Court of Bad Nauheim, Germany and caused to be entered upon the court records what was intended *1049 to be the deed of constitution. It is conceded that official authorization was given by the Ministry of the Interior of the State of Hesse, but not until November 12,1954, which was more than three years after the testator’s death. There is testimony in this proceeding that the Foundation began operations in September, 1956, when its properties were turned over to the Hessian Spa Administration, to be operated for the purposes set forth in the by-laws of Sanatorium Groedel Stiftung. This arrangement does not seem to have any effect upon the legal existence or continuance of the Foundation.
The differences between the parties relate to the legal effects which flow from the acts and proceedings in Germany. In addition, the petitioner claims that regardless of the validity of the Foundation under German law, it was not ‘ 1 in existence ’ ’ at the time of the testator’s death, within the intent and purpose of the testator as expressed in his will. The court will consider first the construction of the will and the meaning to be ascribed to the words, “provided [Sanatorium Groedel Stiftung] is in existence at the time of my decease ’ ’.
The testator, a German physician, had once operated a sanatorium in Bad Nauheim, Germany, known as Sanatorium Groedel, G. m. b. H. It is stated in the argument that his father had also been interested in that institution. The account reported that at the time of his death, the testator owned an undivided 80% interest in the corporation, the balance being owned by his sister-in-law. Apparently the German corporation owned two buildings. It appears from the account that until 1933, the testator had used one of the buildings as a sanatorium for cardiac patients and the other as his residence. In 1933 the decedent left Germany and came to this country. The account reported that the entire premises were later requisitioned for the use of the German Army, and later still, for the use of the American Occupation Forces. The sanatorium buildings were released by the American forces in January, 1955.
The testator executed his will on July 24, 1951. It is clear that despite his long absence from Germany, he had retained his interest in continuing a sanatorium in Germany, under his family name. However, he desired to create a charitable organization or foundation to operate this institution. The testator could not have been unmindful of the events which had taken place in Germany in the period which began shortly before his departure. The future course of the country was not foreseeable at the time he made his will. It was against this background that he drew his will. Two problems faced him. First, the, *1050 charitable organization must be given legal existence. We have seen in our system of jurisprudence the difficulties which ensued when property was bequeathed to an institution which had no legal existence. (See 1953 Report of the N. Y. Law Rev. Comm., p. 645 and cases cited.) There was danger of the lapse of the legacy and perhaps of partial intestacy. So, too, under German law, some difficulty might be encountered if the named legatee lacked legal existence. One of the experts testified at the hearing with respect to article 84 of the German Code, a statute to which we shall give some attention in connection with other points of argument. The expert witness said: “ Under German law the assets of a decedent pass upon his death directly to some person, either natural or legal person. If the foundation had not been in existence there would have been some suspension of title between his death and the consent of the Government, and for that purpose, therefore, the law was created [i.e. Article 84] and it was stated that for the purposes of such gifts passing out of the decedent’s estate the Stiftung is considered existing as of the date of his death.” Again he was asked, “ Would-you say, ‘ therefore that [Article 84] was written in order that the intention of. the testator would not be defeated by the fact that the State authorization followed after his death? ” The expert agreed that this was a fair statement of the intent of the law. Thus the question of legal existence and legal capacity to take and hold property was one of primary importance.
The second problem facing the testator was whether the Foundation would be free to operate in a practical sense even if it were possible to give it legal existence. What the testator knew of past history would have given him some concern even if he could not foresee the future.
The testator made provision in his will to meet both problems. The legacy was made conditional on the Foundation being ‘ ‘ in existence ” at the time of his death. However, even if in existence, the Foundation would not immediately take the fund. It was placed in trust for a period of five years, the trustees being given discretion to pay over the fund to the Foundation, or if they should determine that such action would not be expedient or advisable, then and in that case to pay it to the other trust under subdivision (a). This grant of discretion was plainly intended to give the trustees an opportunity to determine whether the Foundation could be placed in effective operation. The requirement that the Foundation be ‘ ‘ in existence ’ ’ at the time of the testator’s death obviously contemplated existence in the eyes of the law and legal capacity to take the gift bequeathed to it by the testator. That condition was intended to meet the *1051 requirement of the law that a beneficiary must have capacity to take property and to hold and enjoy it. This provision could not have been intended to refer to actual operation of the Foundation at the time of the testator’s death. The trust provisions were intended to safeguard the testator’s plan in that respect. The court, therefore, holds that the words “ provided the same is in existence at the time of my decease ’ ’ were intended to mean existence in law sufficient to enable the Foundation to receive a testamentary gift.
The second question litigated at the hearings is whether the Foundation did have legal existence within the meaning of the will. Both sides produced expert witnesses, and, not surprisingly, they disagreed sharply. One point seems clear to the court, and that is that the granting of governmental authorization after the testator’s death does not mean that the legal existence of the Foundation did not occur until after the date of his death. Article 84 of the German Code was intended to cover just such a situation as this. The petitioner’s own expert translated that article as follows: “If the foundation is only authorized after the death of the founder it is deemed in respect to donations of the founder to have been established already before his death.” All of the experts were agreed that the statute meant precisely what it said. The petitioner’s expert differed from the others more in respect of the applicability of the statute than its interpretation. His view on this question was affected by his interpretation of the will of his testator, and he was thus led to the conclusion that the statute did not apply because this will requires the governmental authorization to be given prior to the testator’s death. As construed by this court, however, the will contains no such requirement. All that it demanded is that enough be done to save the legacy from lapse and to provide a beneficiary recognized by German law as legally capable of receiving a testamentary gift. The court, therefore, holds that under article 84 of the German Code, the Foundation was legally capable of receiving the legacy as of the date of the testator’s death if the deed of constitution was valid and sufficient.
The experts agree that a valid deed of constitution is necessary to give the Foundation legal existence. Government authorization will not validate an illegal and insufficient deed of constitution. The petitioner’s expert testified that the deed of constitution was invalid in every possible respect. He said: ‘ ‘ A deed of constitution must be in writing, it has to contain an indication of the purpose. Secondly, it has to indicate the seat, and third, it has to say something about the officers of the *1052 foundation to be charged with management and representation.” In his opinion, there was no statement of purpose, there was no indication of the seat of the corporation and there was “no indication in this document on the officers. ’ ’ In addition, it was his opinion that the power of attorney to the German lawyer was not sufficiently broad to authorize her to set up a foundation for the testator. The executors’ experts differed from him in every respect. They expressed the opinion that the deed of constitution was valid and sufficient.
When the hearings in this proceeding began, evidence was submitted on the theory that the court would make appropriate findings as to the legal existence of the Foundation under German law, as well as on the issues of fraud and misrepresentation. Two full days of trial proceeded on the issues as formulated by the pleadings. The court was then required to decide whether there would be a sufficient adjournment to enable the petitioner to come to the United States to testify in the proceeding or whether her testimony would be taken abroad, and if so, in what manner. After discussion, counsel then agreed upon the stipulation referred to above, whereby this court would first consider the question of the Foundation’s existence within the meaning of the will and would take up the questions of fraud and concealment at a later time if the representation of its existence were found to be untrue. Thereafter on May 28, 1959, a further hearing was conducted on the preliminary issue of the Foundation’s existence. Evidence of German law was produced. The matter was then adjourned to August 11, 1959. In the course of this final hearing, during the cross-examination of one of respondents’ experts, the attorney for the petitioner produced evidence that on March 19, 1959, the Hessian Minister of the Interior had revoked the authorization granted to the Foundation by his Ministry on November 12, 1954. Thus the legal existence of the Foundation would come to an end, or perhaps, it would never have come into being at all. The court is advised that the executors intend to appeal the revocation to the German courts. The final result will probably not be known for some time. At the moment, however, the Government authorization has been revoked and the Foundation is without legal existence. Up to that point of time it seemed practicable to try the question of the Foundation’s existence as a preliminary issue. In view of developments, however, it would seem that the questions of fraud, misrepresentation or concealment cannot be divorced from the question of the Foundation’s existence because the vital question in the pending proceeding is not simply whether the Foundation was *1053 entitled to receive, or is entitled to retain its legacy, but whether the accounting1 executors were guilty of fraud, misrepresentation and intentional concealment of material facts and whether the decree which directed payment to the trustees should be vacated and set aside. The question of the Foundation’s legal existence may be in litigation in Germany for a substantial period of time. The possibility of the executors’ surcharge should not be held open for a long period of time. Even if we should assume that the Foundation never came into existence because of the revocation of governmental authorization, the question remains whether the accounting executors were guilty of 11 a deliberate concealment and misrepresentation of the truth”, as charged by the petitioner herein, when they alleged in their accounting petition that the Foundation “was in existence at the time of the death of the decedent, Fran [sic] M. Groedel, being duly organized on August 24, 1951, by a judicial act in the District Court of Bad Nauheim, Germany ” and again when they referred to the Foundation in their account as “ a charitable organization which the decedent caused to be created by judicial act on August 24, 1951, as prescribed under German law”. In the opinion of the court, the completion of the trial of all of the issues presented by the pleadings herein would enable the court to dispose of this proceeding more expeditiously than if it dealt only with the highly technical preliminary question of the Foundation’s existence under German law because the latter question cannot be put to rest until the German authorities have spoken the last possible word on that subject.
The decree of the Hessian Minister of the Interior, which revoked the original authorization granted by that department of government, sheds little light upon the questions of German law which divided the experts in this proceeding. The petitioner challenged the deed of constitution on the ground that it failed to set forth the purposes of the organization, failed to describe the beneficiaries, failed to set forth the officers and the provisions for the administration and direction of the Foundation, and failed to specify the seat of the Foundation. The petitioner’s expert on the law of Germany upheld her view that the deed was plainly invalid upon its face. The respondents’ experts expressed the opinion that the deed of constitution satisfied the German law in all these respects. It would seem that upon the issues thus formulated, the decision is to be made upon the records of the District Court of Bad Nauheim, Germany. The defects in the deed, if defects there be, would appear plainly upon the face of those records and should be plainly visible to the German authorities.
*1054 The Ministry of the Interior, however, revoked the governmental authorization on the ground that the person who appeared in the District Court did not have authority from the testator to create a foundation. It is true that this point was also made by the petitioner and by her expert, but it raises an issue which cannot properly be determined on the face of the record alone. Just as the points of argument in the present proceeding were based upon very technical questions of German law, so, too, the points decided by the Ministry were highly technical, but they were not purely questions of German law. It appears that the testator had given a general power of attorney to Dr. Horace W. K. Borchardt, with authority to appoint subagents. Dr. Borchardt, in turn, gave a power of attorney to Dr. Elisabeth Weiss, who lived in Bad Nauheim. That instrument was dated June 18, 1948. In the deed of constitution, Dr. Weiss stated: “I present herewith power of attorney of June 18, 1948, in which it is stated that I am authorized to execute all legal transactions for Professor Dr. Franz Groedel in New York ”. The revoking decree states that Dr. Borchardt had in fact delegated Dr. Weiss to represent him only “in all formalities and juridical acts concerning the Limited Responsibility Company Sanatorium Groedel, Bad Nauheim ”. The decree further states that the constitution of the Foundation was ‘ ‘ not an operation of the Limted Responsibility Company; Madame Dr. Weiss was, consequently, not legitimated for the constitution of the Foundation In other words, the power of attorney referred to the old sanatorium, not to the proposed new one.
A large part of the revoking decree dealt with the possibility of an efficacious ratification of the deed of constitution by the executors under the decedent’s will. It adverted to the fact that two of the three executors were represented in certain formalities which established the by-laws of the Foundation and that in those formalities express reference was made to the declaration by Dr. Weiss before the court at Bad Nauheim. The decree points out that at the time of the testator’s death “ the Foundation had not yet been created with a juridical effect. In defect was the power of attorney * * * as well as the indication of the organs and of the aim of the Foundation. In view of that, it was a question of judgment on the part of the executors of the Will to determine if they wished to ratify the declaration made by Madame Dr. Weiss. If they had wished to do it during the formalities enacted before Dr. Heertz, they should have jointly given their revocation — and not only the majority.” The revoking decree expresses the opinion *1055 that under the law of New York, all of the executors under a will must act together in matters of judgment, such as would be involved in ratifying the acts of the agent in this case. The New York authorities do not support such a broad statement of the rule. (Matter of Leopold, 259 N. Y. 274; Pearse v. National Lead Co., 162 App. Div. 766; Matter of Hammer, 237 App. Div. 497; Geyer v. Snyder, 140 N. Y. 394, 399.)
The reference to action by only two of the executors should not be construed to indicate any difference of opinion among them. There is testimony in the present record that at the time that one executor left for Germany to conclude necessary formalities with respect to the Foundation, there were in fact only two executors in office. The third executor was appointed before the transactions took place in Germany, but his appointment was not immediately made known to the executor who was in Germany. The two executors acted as if they constituted all of the executors although in point of fact there were now three. The revoking deed states that the third executor has not ratified the declaration of the other two executors nor has he manifested his agreement to the German authorities. The decree also states that the “ Surrogate’s Court also, for that, has not sanctioned their way of procedure.” There is implicit in these long statements of reasoning the opinion of the Ministry of the Interior that it was legally possible to ratify the acts of Dr. Weiss in making the deed of Foundation. If it be not possible to ratify the acts of the agent (assuming that ratification is needed), much of the discussion in the revoking decree would be pointless. Moreover, there was testimony herein that Dr. Weiss had in fact been authorized orally to do the very thing that she did with respect to the deed of constitution. The effect of such an oral authorization would necessarily come before the German courts.
It is thus patent that German authorities must eventually make a final and authoritative decision on the legal existence of the Foundation in Germany. If the Foundation was not validly created and does not legally exist, the fiduciaries in this State will be obliged to take appropriate steps to recover the funds transmitted to the sanatorium, unless the executors be surcharged in the amount of all funds so distributed. The duty of the executors under such circumstances is not now before the court. The question now pressing for decision is whether the decree which authorized the executors to make distribution to the trustees will be vacated and annulled and the executors charged with all funds that were in their hands at the date of such decree.
*1056 In the present state of the record, the court deems if necessary to take further evidence on the issues of fraud, misrepresenta.tion and intentional concealment of material facts as alleged in the petition. The matter will therefore be placed on my calendar for hearing on the 2nd day of March, 1960 at 11:00 a.m. Proceed accordingly.