S. Samuel Di Falco, S.
The petitioner seeks to vacate the decree which judicially settled the account of the executors, on the ground that a statement contained in the account relative to the German charitable Foundation (Stiftung) “ was a deliberate concealment and misrepresentation of the truth * ’. She *1057 demands the vacatur of the decree, a direction for the repayment to the estate of any assets wrongfully or erroneously distributed, and a further direction to the executors to distribute the funds to the trust of which the petitioner is a beneficiary. In its prior decision (23 Misc 2d 1046,1048), the court discussed the nature of the controversy, its background, and the evidence relating to the ‘1 existence ’ ’ of the Foundation. The court therein construed the will insofar as it related to this controversy. For the reasons stated in that decision, the court directed a further hearing on the issue of fraud, misrepresentation and intentional concealment of material facts as alleged in the petition.
The court finds that there was no fraud, misrepresentation or intentional concealment of any facts on the part of any one of the executors. The statements made in the petition and in the account were made in good faith and were justified by the facts then known to the executors. Indeed, there would be no real basis for any of this litigation were it not for the fact that the authorities at the domicile of the charitable legatee have taken a surprisingly technical view of the Foundation’s legal existence, after apparently endowing it with existence, de jure as well as de facto. The executors can hardly be expected to have foreseen what took place at the domicile of the charity after it had been in actual operation as a Foundation.
The charge of misrepresentation and concealment is based upon a statement made in Schedule L of the executors’ account. Reference was first made to the decedent’s interest in a corporation recognized under German law under the title “ Sanatorium Groedel G. m. b. H.”. The account then contains this statement: “ Decedent’s interest in said entity was devised and bequeathed to ‘ Sanatorium Groedel Stiftung ’, pursuant to Article ‘ ninth ’ of the Will, a charitable organization which the decedent caused to be created by judicial act on August 24, 1951, as prescribed under German law. The said organization conducts its operation in the City of Bad Nauheim, Germany ”. The petitioner charges: 11 This statement was a deliberate concealment and misrepresentation of the truth ”.
The petition to vacate the decree does not expressly refer to the petition in the accounting proceeding. It does, however, allege that the petitioner relied on the assurance of the executors, made in the account11 and elsewhere ” that the Foundation was in existence at the time of the decedent’s death. Presumably the reference to assurances made “ elsewhere ” were intended to mean the accounting petition, because there is no proof of any other representations made by the executors to the petitioner herein. The petition in the accounting proceeding alleges: *1058 “ That Sanatorium Groedel Stiftung, hereinafter referred to as Sanatorium, particularly mentioned in Paragraph Eighth, subdivisions (a) and (b), and Paragraph Ninth of the decedent’s Last Will and Testament was in existence at the time of the death of the decedent, Fran M. Groedel [sic], being duly organized on August 24, 1951, by a judicial act in the District Court of Bad Nauheim, Germany. That the buildings and the accommodations were at least since the death of the decedent, Franz M. Groedel, until January 1955 occupied by the American occupation forces in Germany. That in or about January 1955 the premises so occupied were vacated, and since then alterations and renovations have been commenced to completely adapt the structures and improvements for the purposes for which the Sanatorium was organized, namely, ‘ to provide an all-paid cure in Bad Nauheim to indigent physicians, their widows and minor children, regardless of nationality, religion or race ’. That the executors intend' to turn over and distribute to the Sanatorium one-half of the residuary estate as provided for in Paragraph Ninth, and to pay over to the Sanatorium and/or the Trustee under the Will of Franz M. Groedel one-half of the residuary estate as provided for in Paragraph Eighth, subdivision (b).” It is not even argued that any misrepresentation was made as to the condition of the buildings, their use during the war, their return to the owner, and the commencement of alterations and renovations. The charge of misrepresentation is directed to the statement that the Foundation ‘ ‘ was in existence at the time of the death of the decedent ’ ’ and the statement that it was ‘ ‘ duly organized on August 24, 1951, by a judicial act in the District Court of Bad Nauheim ”.
Insofar as these statements represent matters of opinion, the executors are as strongly of the same opinion now as they were when the statements were made. They contend that the Foundation was in existence within the meaning of the will of this testator, and that it was duly organized on the date specified by a judicial act in the District Court.
There is ample support in the extrinsic facts to justify the executors in the statements then made. The testator fully intended to cause the creation of the Foundation described in the account, and he clearly expressed his intention to devote a portion of his estate to the use of such Foundation. His will, which was executed on July 24, 1951, refers to the Foundation by name and it specifies the place where he intended the Foundation to operate. The date of his will is exactly one month prior to the date of the so-called judicial act of creation. The testator did not go to Germany personally. Several years earlier he *1059 had executed a general power of attorney, in the form prescribed by article 13 of the General Business Law, which authorized Dr. Horace W. K. Borchardt to act for him in all matters. Under the statutory form, the authorization to represent him in “ all other matters ” must be construed to mean “ that the principal authorizes the agent to act as an alter ego of the principal with respect to any and all possible matters and affairs which are not enumerated” in sections 222 to 232 inclusive “and which the principal can do through an agent ” (General Business Law, § 233). The instrument gave full and unqualified authority to the agent to delegate any power to any other person.
Dr. Borchardt did not travel to Germany for the initial step in the creation of the charity which had already been referred to in the testator’s will, but he delegated authority to a lawyer in Germany, Dr. Elisabeth Weiss. The instrument appointing the subagent specifically states that it is made “ on the strength of my general power of attorney executed on 20 May, 1948 ” by the decedent. It states that the attorney delegates his power, thereby giving power of attorney to Dr. Weiss “to represent me by power of attorney in all business and legal transactions concerning the Sanatorium Groedel, G. m. b. H., Bad Nauheim, and to arrange all legal negotiations for this purpose as well as the necessary entries in the Land Register on my behalf.” The wording of this power of attorney furnishes one of the principal bases for attacking the legal existence of the Foundation.
Dr. Borchardt testified that in addition to the written power of attorney given to Dr. Weiss under date of June 18, 1948, he also, in a telephone conversation which he had with Dr. Weiss on August 24, 1951, gave her power to represent him and the decedent in setting up the Foundation. He testified that he not only gave her authority to create the Foundation, but he gave her oral instructions to do so. Even the petitioner’s expert admits the possibility of creating a Foundation through an oral power of attorney and oral instructions.
The German attorney, Dr. Weiss, appeared in the District Court at Bad Nauheim on August 24, 1951 and stated that she was presenting “ power of attorney of June 18, 1948, in which it is stated that I am authorized to execute all legal transactions for Professor Dr. Franz Groedel in New York.” There can be no doubt on this record that Dr. Weiss was in fact authorized to do just what she was then engaged in doing; that the decedent wished to create the Foundation which was already named as beneficiary in his will, and that the decedent’s attorney, Dr. Borchardt, fully intended to authorize Dr. Weiss to create that *1060 entity. The only difficulty at this point is that the particular instrument referred to by Dr. Weiss did not in terms confer such authority, notwithstanding the fact that she did possess such authority.
In her appearance at the District Court, Dr. Weiss placed upon the court records the following declaration: “As of today I establish herewith the Sanatorium Groedel Stiftung with a temporary cash capital of DM 50,000. The appointment of the final directors will be made in the near future. For the time being I am the only director.”
On September 22, 1951, during the lifetime of the decedent, Dr. Weiss appeared before the District Court at Bad Nauheim with another attorney and they placed upon the court records the names of the five members of the board of trustees of the Foundation and named the decedent as chairman of the board, as well as one of the members thereof. They also stated upon the court record that the “by-laws of the Foundation will be worked out shortly and submitted for ratification by the Foundation directly to the joint administration. After ratification they will be filed with the District Court.” The decedent died on October 12, 1951.
The by-laws of the Foundation were filed on or about August 3, 1954. The Minister of the Interior of the State of Hesse gave formal official approval of the Foundation on November 12, 1954. Under article 84 of the German Code, the official authorization relates back to the death of the testator with the result that, as the court ruled in its prior decision (23 Misc 2d 1046, 1051, supra), “ the Foundation was legally capable of receiving the legacy as of the date of the testator’s death if the deed of constitution was valid and sufficient.” One other basis of attack on the existence of the Foundation should be noted here. Letters testamentary were issued in December, 1951 to the three executors named in the will. One of them died in December, 1953. On or about June 24, 1954, a successor executor was appointed. Just prior to that time the two surviving executors had concurred in the by-laws drawn up for the Foundation. One of them went to Germany for the purpose of concluding the necessary formalities in relation to the bylaws of the Foundation. That part of the record which relates to the by-laws is annexed to the answers of the executors. It states that on August 3, 1954, one of the executors, Dr. Horace W. K. Borchardt, appeared personally before a notary in Germany. He appeared, according to the record, in his capacity as executor under the will of this decedent and as attorney in fact of his coexecutor, Harry Groedel. The record *1061 further states: “At the same time he presented power of attorney of Mr. Harry Groedel in New York, so that the majority of the three executors was represented.” At that time, he adopted all prior proceedings in relation to the Foundation, as well as the by-laws of the Foundation.
A third executor had actually been appointed prior to the day that these official transactions took place in Germany, but the fact of the appointment was not then known to the executor in Germany. It thus appears that the adoption of the by-laws before the notary was accomplished by two of the three executors then in office. However, the third executor thereafter approved and ratified all of the transactions of the other two. The Minister of the Interior of the State of Hesse noted in his decision the fact that the third executor had ratified the declarations and acts of the others. The third executor is also a party respondent in this proceeding, he was a party to the accounting proceeding, and is one of those charged with deliberate concealment and misrepresentation of the truth.
The Foundation began actual operation as a charitable institution in Bad Nauheim on or about September, 1956 when its properties were turned over to the Hessian Spa Administration to be operated for the purposes specified in the by-laws of Sanatorium Groedel Stiftung.
On the basis of the transactions before the District Court at Bad Nauheim, Germany, and on the applicable German law as explained by the experts called on behalf of the executors, and upon the will as construed by this court, it would appear that Sanatorium Groedel Stiftung was validly created in Germany, was in existence at the time of the testator’s death within the meaning of his will and was entitled to recognition by the executors as a beneficiary under this will. If no further action had been taken in Germany, it would be difficult to deny that the Foundation was in existence at the time of the decedent’s death, and that the statements made by the executors were in fact true. However, additional action was taken by the State of Hesse subsequent to the entry of the decree on accounting herein. One might reasonably expect that if the Government did take action on the challenge to the status of the Foundation, that action would resolve the original dispute that had divided the experts who testified herein on German law. They differed on the conclusions to be drawn from matters appearing on the face of the court record in Bad Nauheim. However, the action of the Hessian Minister of the Interior touches only obliquely on the validity of the Foundation judged solely on the official *1062 record, and it disposes of the challenge in part upon disputed questions of fact and in part upon the basis of New York law.
The decision of the Minister of the Interior was rendered during the course of hearings herein. The petitioner introduced in evidence, toward the end of the hearings, a certified copy of an official notice of the State of Hesse dated April 4,1959, revoking the authorization which it had officially granted on November 12, 1954 to the German Foundation. The Minister of the Interior stated that the conditions required for his authorization in 1954 appeared then to have been met. In that connection, he referred to the deed of constitution, the court record made by Dr. Weiss on August 24, 1951, the fact of the death of the testator, and the adoption of the by-laws on August 3, 1954 by the “ majority of the three executors of the will.” It would thus appear that on the face of the records, the legal existence of the Foundation appeared to be sound. His decision then refers to the defects alleged to have existed, and, in particular, “ to the deficiency of the power of attorney on the basis of which Madame Dr. Weiss had constituted the Foundation. ’ ’ The Minister stated in his decision that detailed research revealed to him that: (1) the power of attorney dated June 18, 1948 did not<£ cover the deed of foundation ”; (2) that the majority of the executors could not ratify the deed of Foundation; (3) that neither the third executor nor the Surrogate’s Court ratified the constitution of the Foundation. On the basis of this research he concluded that no valid deed of Foundation existed, and that the authorization must be revoked.
An appeal was taken by the Foundation to the Minister of the Interior from his decision revoking the approval of the Sanatorium. The Minister, in a second decision, confirmed his original decision revoking the authorization. He said that the oral power of attorney given to Dr. Weiss by telephone ££ does not render valid the act of constitution.” In this decision, there is extended discussion of the power of attorney, several different grounds of invalidity are stated, and it is not at all clear which of the grounds is intended to support the Minister’s conclusion. Some of the grounds of supposed invalidity deal exclusively with German law. This court will leave all questions of German law to the courts of that country, to which the executors have appealed the Minister’s decision. The final reason for ruling that Dr. Weiss acted without an effective power of attorney reads as follows:
£ £ The question of determining if, in principal, a general mandatory domiciled in New York can give a verbal mandate to a person domiciled in Germany covering a judicial act neces-
*1063 sitating a special form to be executed in Germany; if therefore a power of attorney exists at all permitting of examination whether it is effective in accordance with par. 811,167, II BGB, is ruled according to the laws of the State of New York.
“ The validity of a verbal power of attorney of this nature would be in contradiction with this law. (par. 26, 28, 29 (1) Restatement of the Law of Agency, A. L. I.; American Jurisprudence II p. -25n. 6, 74 n 20, 75, 76) ”.
It was thus decided that the oral power of attorney given to Dr. Weiss was invalid under the law of New York. In the present proceeding, no one even argues that the oral power of attorney was invalid under New York law.
The later decision of the Minister of the Interior also decided that the act of constitution of the Foundation was not established in August, 1951, but rather on September 22, 1951 when the names of the directors were added to the court records. In his opinion, the original act of constitution was void and was not subject to ratification, and the act of constitution should have been started over again on September 22, 1951. In this finding there is again a reference to the lack of authority of the agent, and it is not clear to what extent the alleged defect in the power of attorney permeates the finding of invalidity of the act of constitution. The third ground of decision is that the original act of constitution did not state the aims and the “ organs ” of the Foundation. The Minister said that in the notarised act of 1954, the executors “ regarded as valid the declarations made by Madame Dr. Weiss the 24/8/1951. It is to these declarations that the parties referred. The notarial act dated 3/8/1954 did not want to and could not, for this reason, be a ratification or a new undertaking of the Foundation.” The decision of the Minister referred to the will of this testator and to the provision for the existence of the Foundation at the time of the testator’s death. He decided that the Foundation could not be created by a new act of constitution after the death of the decedent, although in this respect, the learned Minister was engaged in a judicial construction of the will rather than with the creation of the Foundation under German law.
As a further defect in the constitution of the Foundation, the decision stated that the particulars of the Foundation depended “ upon the discretion of the executors of the Will.” He decided that under the law of New York “ all the executors of a Will should act together, when their action is not an activity entering into the current administration, but implies more so — as is the case here — a reasoned judgment.”
*1064 A final decision by the German authorities on the legal existence of the Foundation under the law of Germany would, of course, conclude that question. The issue before this court is, however, somewhat broader, namely did the executors deliberately misrepresent the facts in their accounting proceeding? If the Foundation was legally constituted as of the decedent’s death, there can be no question of misrepresentation at all. On that question, the highest authorities in Germany have not spoken the last word.
With respect to the charge of deliberate misrepresentation on the part of the executors, we must look at the facts as they existed at the time of the accounting. It must be noted that the account was filed on February 3, 1956, and that in April, 1959, the Minister of the Interior of the State of Hesse, looking at the official records as of November 12, 1954, stated that the “conditions required for [the 1954] authorization appeared to have been met. ’ ’ If the official charged with the responsibility for taking action on the basis of that record, could regard the basic conditions as having been met, and if he, thereupon gave official authorization to the Foundation, and if that Foundation was thereafter operated through the Hessian Spa Administration, the New York executors would appear to be fully justified in regarding the Foundation as having legal existence and in regarding the court proceedings and the later proceedings as being what they purported to be . This court is of the opinion that the transactions in Germany and the official actions of the Government justified the executors in saying that the Foundation was in existence and was capable of receiving a testamentary gift. They are not chargeable with knowledge of the actions that would later be taken by the Minister of the Interior to revoke the authorization which he had heretofore given to the Foundation or of the grounds upon which his action would be based.
It is argued that the executors were guilty of wrongdoing in representing to this court that the Foundation was in existence, because that statement represented a conclusion drawn from other facts and circumstances which, it is argued, should have been fully stated by the executors. It is patent, however, that no statement of the executors could satisfy the petitioner in the present proceeding unless the executors recited the alleged defects which were presented to the Minister of the Interior of the State of Hesse, and which formed the basis of his decision. It would.be necessary, for the executors to have foreseen that the power of attorney'would be later held to be insufficient, that the oral power of attorney would be declared to be ineffec *1065 tive, that although the three executors were in complete agreement, their action would be held to be ineffectual because the executor reported to the German officials that the action was by two of them; and that finally the official authorization would be withdrawn by the State of Hesse. ■ ■ - :
The executors were engaged in carrying out the aims and purposes of the decedent and in executing. his testamentary plan to devote a stated proportion of his assets to this charitable endeavor. The charge that any one of them was motivated by personal interests in baseless. The court finds that they acted in good faith. They could not reasonably have foreseen the myriad of technical objections that would later be urged to destroy the charity. Some of the objections are based upon disputed questions of fact. For instance, the revoking decision expresses doubt that an oral power of attorney was ever given to Dr. Weiss. This court has no doubt that she was not only authorized, but directed to do exactly what she did. The finding of nonunanimity among the executors must also come as a surprise to them.
This court pointed out in its prior decision (23 Misc 2d 1046, 1054-1055, supra) that the question whether one of several executors may validly act alone, does not depend simply on whether the act be characterized as. ministerial in nature or be one involving judgment and discretion. In Matter of Leopold (259 N. Y. 274, 277-278), the Court of Appeals referred to the assumption by the lower court that “ a single administrator can, without the cooperation of his co-administrator, act for the estate only when performing his ministerial duties ’ ’,. and it said: ‘ ‘ That assumption is not in accord with the rule which is well established in this State and in other jurisdictions.” It has been said that the test is not whether judgment or discretion enters into the act, but rather whether the act be truly executorial or be in the nature of .an exercise of trustee’s power (see Powers of Co-Executors, 33 Mich. L. Rev. 99, 101; Alvin E. Evans, The General Powers and Relations of Co-Executors, 14 N. Y. U. L. Q. Rev. 127, 154). We are not required here to say whether the action should be by the trustees or by the executors. The question in this case is not really whether two fiduciaries can act without the concurrence of the third, because in point of fact the one spoke for all of them although he was not then aware of the appointment of the third. The last executor ratified and concurred in the action of his coexecutors, and it makes no sense at this point to engage in academic discussion of the extent of one fiduciary’s authority to bind all of them.
*1066 The court, therefore, holds that the executors did not deliberately misrepresent or misstate facts in the accounting proceeding. They acted in good faith and stated the facts as they then appeared in the public records of the place where the Foundation had been endowed with at least a semblance of existence.
It is also asserted by the petitioner that even if the executors made an innocent misstatement of facts, the decree settling their account should be vacated and set aside. Whether or not the facts were correctly stated in the accounting proceeding, is a question that cannot be determined here until the German courts have rendered their final decision. This court has' judicially construed the will and determined the meaning of the words ‘ ‘ provided the same is in existence at the time of my decease.” The German authorities will decide whether the Foundation had existence in law sufficient to enable it to receive a testamentary gift. It is not necessary that the Foundation be complete and in actual operation. If the courts of that country determine that the Foundation never possessed legal capacity to receive a testamentary gift, the trustee will be under obligations to take such steps as are necessary to recover the funds from Germany. Undoubtedly, he mil have the co-operation and assistance of the authorities there. At that time and in such event, it will be appropriate for this court to decide upon the proper distribution of the fund.
It is not appropriate at this time to vacate the decree which settled the executors’ accounts. In its prior decision {supra, p. 1048), the court referred to the decree on accounting as having directed payment of funds to the trustees of the subdivision (b) trust (which is the charitable trust), but an examination of the text of the decree shows that it contains no direction for payment of any funds to the trustees, except for income and except for a balance that might remain in a fund reserved to pay New York estate taxes, foreign inheritance taxes and New York and Federal income taxes. A supplemental account was filed in the course of that proceeding and it shows that the executors had delivered to the trustees of the two trusts all of the corpus to which they would be entitled except for anything that might remain of the reserve fund.
Under the terms of the decedent’s will, delivery of the funds to the trustees, or to the sole remaining trustee, was proper. The will gives the entire residue to the trustees. The trustees are to make division of the fund and they are to make distribution thereof. The very text of the will upon which the petitioner relies to establish her right to the fund, relates to the trustees *1067 and not to the executors. In the event that the surviving trustee recovers moneys from the Foundation or the administration which operated it, the petitioner is still free to urge any rights she may have under subdivision (b) of article eighth of the will. In the event that the trustee negligently fails in his duties to the trust estate, she is still free to urge her rights against him. The decree on accounting did not narrow or limit her rights and it did not declare or define the rights of the Foundation. It simply settled the accounts as filed and awarded fees and commissions and disposed of the income. It is true that the executors had divided the trusts in two parts before making delivery but such division did not take away any powers given by the will to the trustees.
Moreover, the vacatur of the decree does not involve simply the correction of an error in the accounts, but is in reality directed toward a surcharge of the executors. If the proceeding had been instituted while the funds were still in the hands of the trustees, the executors could not be harmed by any changes or modifications in the accounts. However, the court understands that the trustees, or the sole remaining trustee, made distribution to the Foundation. The position of the executors has substantially changed. Petitioner cannot fairly ask a vacatur of the decree on the ground of mutual mistake and in the interests of justice when her purpose is to charge the executors personally with the entire amount of money distributed to the trustees, and by them to the Foundation.
The application of the petitioner is in all respects denied, without prejudice to any rights she may have against the trust estate and the trustees or trustee thereof. Submit decree on notice accordingly.